Filed 8/14/20 Kuigoua v. Cal. Corrections Health etc. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ARNO P. KUIGOUA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA CORRECTIONS HEALTH CARE SERVICES et al.,<br><br>Defendants and Respondents. | B291984<br><br>(Los Angeles County Super. Ct. No. BC608602) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David S. Cunningham III, Judge. Affirmed.

The Appellate Law Firm, Corey Evan Parker and Tania Williams for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian and Brad Parr, Deputy Attorneys General, for Defendant and Respondent.

_____

## *INTRODUCTION*

Plaintiff Arno P. Kuigoua appeals from summary judgment of his employment discrimination and wrongful termination claims, entered in favor of defendant California Correctional Health Care Services (CCHCS).  We affirm because no triable issue of material fact exists for the six causes of action as alleged in the operative first amended complaint:  retaliation, discrimination, and failure-to-prevent, in violation of the Fair Employment and Housing Act ("FEHA"); retaliation under the Labor Code and the Whistleblower Protection Act; and discrimination and retaliation by a health care facility under the Health and Safety Code.

## *FACTS AND PROCEDURAL BACKGROUND*

### *1.    Plaintiff's Employment with CCHCS*

In 2010, plaintiff, a man of Cameroonian descent, began working as a registered nurse with CCHCS at various prison facilities.  "California Correctional Health Care Services is part of the California Department of Corrections and provides health care services to inmates housed at California's state prisons."  In 2012, plaintiff was promoted to part-time supervisor registered nurse II at Lancaster Prison.  Plaintiff's duties included planning, assisting and directing the work of the nursing staff; ensuring duties were assigned and shifts covered; developing nursing service policies and procedures; and the recruiting and evaluation of nursing staff.

As a part-time employee, plaintiff was guaranteed 20 hours of work per week.  In point of fact, he typically worked more than 70 hours per week because he volunteered for overtime, although some of the overtime was compulsory.  In December 2013, plaintiff was offered a permanent full-time position as a supervisor registered nurse at California City Correctional

2

Facility, but declined the job so that he could keep his part-time position at Lancaster Prison.

In the present lawsuit, plaintiff asserted that CCHCS subjected him to adverse employment actions beginning in late 2013 and wrongful termination in May 2015 as a result of gender discrimination.[1]

Below, we summarize the principal employment events that formed the basis for plaintiff's claims and those he raised during summary judgment proceedings. As we shall explain, the theories plaintiff asserted in response to defendant's summary judgment motion were not always square with the allegations he made in his first amended complaint, a fatal misalignment in defending against summary judgment.

## 2. *Tension Between Defendant and His Supervisors*

Many of the incidents plaintiff complained of involved his former supervisor, Sharon Brooks. The first incident occurred in late December 2013, when plaintiff and Brooks had an email exchange about another employee receiving a specific shift. Plaintiff characterized Brooks's decision to schedule the employee as wasteful. Plaintiff attested that he filed an internal complaint against Brooks with the prison warden and CEO about the scheduling, but it was not addressed.

Plaintiff alleged that following this complaint, he suffered a series of retaliatory actions. Two days later, the director of nursing at CDCR told plaintiff in an email to follow a particular procedure for shift changes, explaining plaintiff recently had not

---

[1] Plaintiff asserted in his first amended complaint and opening brief that he was terminated on June 5, 2015. Plaintiff cited his own declaration for support of this statement. Records provided by CCHCS indicate his transfer to the Department of Veteran Affairs was completed on May 11, 2015. Any discrepancy in the date does not affect our analysis.

3

followed the procedure when dealing with one of his staff. Plaintiff attested that about one month later, the director accused plaintiff of failing to perform job duties.

Plaintiff attested that in February 2014, the director and Brooks falsely accused plaintiff of wrongdoing and insubordination. He asserted that in March 2014, he was shouted at, accused of failing to complete several job duties, and was written up for "care incidents."

On March 27, 2014, he received a formal Letter of Instruction for his failure to prepare a medication error report in March 2013. The year lapse of time between the error and the letter appeared attributable to CCHCS's internal investigation.

### 3. *April 2014 National Origin Complaints*

Plaintiff responded to the Letter of Instruction in a memorandum, dated April 10, 2014. He accused Brooks of retaliation and discrimination based on his natural origin or nepotism. He wrote that the letter of instruction represents "the epiphany of retaliation practice and discrimination, favoritism. I'm trying hard to find the reason behind the bigotry I am being subject to. I can come up with only two reasons: my national origin or nepotism."

On April 13, 2004, plaintiff wrote an email to himself – he is listed as both sender and recipient. The email, though, starts "Dear Ms. Shank," an apparent reference to CCHCS CEO Penny Shank. The email requests a meeting about his disputes with Brooks and others. It continues, "I would like to know why I am being subject (between Ms. Brooks and Ms. Pryor) to increasing harassment, discrimination, favoritism. I can't find any rational explanation other than my national origin." In a memorandum also dated April 13, 2014, which he testified he sent to CEO Shank, plaintiff complained that he was subjected to discrimination, harassment, and retaliation, and again repeated

4

he could assume that it was due to "national origin" discrimination.[2] In an April 16, 2014 memorandum, plaintiff stated he believed national origin discrimination prompted another supervisory employee to become upset with him for kicking her chair.

### 4. Conflict with Brooks Over Supervisor Duties

On May 1, 2014, Supervisor Brooks sent out an email to supervisory staff, including plaintiff, which stated: "Please make sure your staff correct their mistakes, if the staff is on vacation it will become your responsibility to correct." Via email, copying the recipients of Brooks's original email, plaintiff responded the same day: "This practice will go against the Nursing Practice Act ('NPA') which is the body of California law that mandates the Board to set out the scope of practice and responsibilities for RNs."

In a May 2, 2014 email, Brooks provided further direction to plaintiff and all other persons copied on plaintiff's email. She stated: "The correction will need to occur as indicated per Title 22 and to ensure licensure for [Lancaster Prison]. Now, as a supervisor I did not believe I had to break down each and every exact function that you as a nurse and supervisor will need to perform and assess. However, if you and others with responsibilities to the CTC are requiring this, please let me know."

Plaintiff sent another email on May 4, 2014, stating he "vehemently decline[d]" to follow Brooks's directive. Plaintiff's direct supervisor, Nair Manjula, responded that same day, providing further guidance to plaintiff. Manjula explained via email: "You have taken the directive 'your responsibility to

---

[2] The record is unclear whether the email actually was sent to Ms. Shank. The memorandum was.

correct it' as if you were asked to chart in the eUHR. You as a supervisor are responsible for your staff omissions or inaccuracy. The way to correct it is: 1 – counsel the staff. 2 – give them training. 3 – monitor their work. 4 – if error repeats you write them up. 5 – if error continues then go to progressive discipline."

5. ***Passed Over for Promotions and Overtime***

In July 2014, plaintiff filed a grievance asserting that he was unreasonably denied overtime hours in July 2014 due to his national origin.

In spring and fall 2014, plaintiff applied for three promotions but received none. According to its pattern and practice, CCHCS selected the three highest scoring applicants in the interview process for those positions. These applicants happened to be female.

6. ***Sick Leave and First Complaint of Gender Discrimination***

On December 14, 2014 – six weeks before what would be his last day working at CCHCS – plaintiff stated in an email to management that he believed he was being mistreated due to his national origin.

On January 28, 2015, plaintiff submitted a Discrimination Complaint Form with the Department of Corrections and Rehabilitation alleging not national origin discrimination but gender discrimination.[3] The complaint identified a licensed vocational nurse by the name of Monique Nwachukwu as responsible for the discrimination plaintiff experienced. He alleged that he reported the discrimination to Manjula, Brooks, and Shank.

---

[3] The form plaintiff submitted contained 16 blank boxes, one for each of several forms of discrimination, including national origin. The only box plaintiff checked was "sex/gender."

On January 30, 2015, plaintiff went off work on sick leave. He did not return to Lancaster Prison. Instead, plaintiff filed a worker's compensation claim for stress.

**7.** **_Plaintiff Accepts a Job with Another State Government Department_**

On January 15, 2015, before taking his sick leave, plaintiff applied for a position with California Department of Veterans Affairs (CalVet). In mid-April, CalVet offered and plaintiff accepted a permanent full-time RN position with CalVet.

While completing an incompatibility activities policy form, plaintiff revealed to CalVet for the first time that he wanted to maintain his employment as a permanent part-time supervisor registered nurse at Lancaster Prison. On May 11, 2015, CalVet notified plaintiff that he would be unable to maintain both positions, as the CalVet position was subject to mandatory overtime depending on operational need.

CCHCS learned that plaintiff had accepted a full-time nursing position on May 11, 2015 when it received an email from CalVet. Following the email, CCHCS transferred plaintiff's employment to CalVet that same day.[4]

**8.** **_Equal Employment Opportunity Commission (EEOC) Complaint_**

In the interim, in February 2015, plaintiff filed a charge with the EEOC, in which he claimed that he was subjected to gender discrimination. CCHCS responded substantively to the EEOC complaint on April 11, 2015. On June 18, 2015, he amended his EEOC complaint, to include the allegation that he was discharged from his position at CCHCS.

---

[4]    As of June 26, 2017, well after plaintiff filed his first amended complaint, plaintiff was still working at CalVet.

On October 15, 2015, plaintiff again amended his EEOC complaint to include his claim that he was not permitted to work for both CalVet and CCHCS, complaining that this was due to his gender. CCHCS responded to these amended EEOC Complaints on November 12, 2015. None of the amendments to plaintiff's EEOC complaint alleged discrimination on the basis of national origin.

**9.** ***Complaint with the State Personnel Board***

On March 7, 2016, more than a year after the filing of his EEOC complaint, plaintiff filed a whistleblower retaliation complaint with the State Personnel Board. On April 11, 2016, the State Personnel Board dismissed plaintiff's complaint.

**10.** ***Plaintiff's Lawsuit against CCHCS***

Plaintiff filed the present lawsuit against CCHCS alleging discrimination. The first amended complaint, dated June 14, 2016, was the operative pleading at the time of summary judgment and alleged six causes of action. We describe in summary fashion each of cause of action. The first alleged that CCHCS retaliated against plaintiff after he had complained about gender discrimination while working at Lancaster Prison. The second alleged that CCHCS engaged in gender discrimination by promoting less-qualified female candidates for the supervisor positions to which he applied. In the third cause of action, plaintiff asserted that CCHCS failed to prevent the gender discrimination and retaliation alleged in the first two prior causes of action.

The fourth cause of action stated that CCHCS had retaliated against him in violation of Labor Code, section 1102.5 after plaintiff complained about staffing and supervisory matters, including a supposed directive allowing nurses to work for 24

8

hours straight.[5]  In the fifth cause of action, plaintiff alleged he was retaliated under Health and Safety Code section 1278.5 when he made disclosures about the quality of patient care.[6]  The final cause of action, brought under the California Whistleblower Protection Act, asserted that plaintiff's employment was terminated after he made his complaints about patient care.

## 11.  *Summary Judgment*

In July 2017, CCHCS moved for summary judgment. CCHCS argued that plaintiff's first cause of action failed because it was for retaliation based on a complaint of gender discrimination, and plaintiff had not complained about gender discrimination while working at Lancaster Prison.  CCHCS also asserted plaintiff had not been subject to an adverse employment action.

For the second cause of action, for the failure to promote, CCHCS asserted that the nurses who had been selected over plaintiff were better qualified for the job, and that plaintiff could

---

[5]     Labor Code, section 1102.5, subdivision (b) prohibits retaliation for, among other things, disclosing information to a person with authority over the employee or who has the authority to investigate the disclosure "if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute . . . ."  (Lab. Code, § 1102.5, subd. (b) (italics added).)

[6]     Health and Safety Code section 1278.5 states:  "A health facility shall discriminate or retaliate, in any manner, against a patient, employee, member of the medical staff, or other health care worker of the health facility because that person has . . . .  Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity."  (Health and Saf. Code, § 1278.5, subd. (b)(1)(A).)

9

not show any connection between his gender and the failure to promote. Next, CCHCS argued that, if the first two causes of action failed, so did the third cause action for failure to prevent the wrongs alleged in the first two causes of action.

On the fourth cause of action, CCHCS argued plaintiff did not make protected disclosures required by the Labor Code and, therefore, could not show retaliation for the disclosures he alleged. On the fifth cause of action, CCHCS asserted in part that plaintiff had not complied with the presentation requirements of the Government Claims Act. On the sixth cause of action, CCHCS contended that plaintiff neither had made a protected disclosure under the California Whistleblower Protection Act, nor had he suffered an adverse employment action within the Government Code limitations period.

Plaintiff opposed the motion, largely relying on his own declaration, deposition testimony, and documentary evidence to support his gender discrimination and retaliation claims. CCHCS replied to the opposition with argument and objections to some of plaintiff's evidence.

The court heard the motion on May 4, 2018. The trial court sustained some of CCHCS's evidentiary objections, overruled others, and granted CCHCS's request of judicial notice of the EEOC and State Personnel Board complaints. Plaintiff does not appeal these evidentiary rulings. The court determined that no genuine issues of material fact existed for any of six causes of action. In a well-reasoned opinion, which we discuss in greater detail below, the trial court granted summary judgment. On May 31, 2018, the court entered judgment. Plaintiff moved for a new trial; the motion was denied based on untimely service on defendant. Plaintiff appeals.

## DISCUSSION

We review a trial court's decision on summary judgment de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the [trial] court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citations.] If a defendant establishes that one or more elements of a cause of action cannot be established or that there is a complete defense to that cause of action, the burden shifts to the plaintiff to show that a triable issue exists as to one or more material facts. [Citation.] If the trial court finds that no triable issue of fact exists, it then has the duty to determine the issue of law. [Citations.]" (*Getchell v. Rogers Jewelry* (2012) 203 Cal.App.4th 381, 385.)

"[A] summary judgment motion is directed to the issues framed by the pleadings. [Citations.] Those are the only issues a motion for summary judgment must address. [Citations.]" (*Hilton K. v. Greenbaum* (2006) 144 Cal.App.4th 1406, 1412.) An "appellant may not defeat a summary judgment motion by producing evidence to support claims that are outside the issues framed by the pleadings." (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 674, fn. 6.)

We address each cause of action in turn.

### 1. First Cause of Action for Retaliation in Violation of FEHA

The trial court concluded that plaintiff had failed to create a triable issue of fact for retaliation under FEHA because

plaintiff did not present evidence that any claimed retaliation resulted in an adverse employment action. We agree.

To "establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

Here, plaintiff alleged in the first amended complaint that that he "complained about his supervisor engaging in discriminatory and retaliatory behavior, based upon [his] complaints about gender," and that as a result of the "protected activities in complaining about his supervisor's sexist words and/or actions," he was retaliated against.

The undisputed evidence showed that plaintiff did not complain to his supervisors about gender-based discrimination during his tenure at Lancaster prison. As the trial court observed, the evidence plaintiff presented "indicates that [his] complaint[s] to [CCHCS] were about national origin discrimination or nepotism . . . and not gender discrimination." Plaintiff's April 10, 2014 memo stated: "I'm trying hard to find the reason behind the bigotry I am being subjected to. I can come up with only two reasons: my national origin or nepotism." As late as December 14, 2014, weeks before he stopped physically working at Lancaster Prison, plaintiff asserted that he was being subjected to "discrimination based on my national origin."

Plaintiff argues that the April 10, 2014 memo was sufficient because it complained of discrimination. The document complained of national origin discrimination, and plaintiff did not plead national origin discrimination in his first amended complaint. " 'The pleadings delimit the issues to be considered on a motion for summary judgment. [Citation.]' [Citation.] Thus, a

12

'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 (*Laabs*).) "If the opposing party's evidence [to a motion for summary judgment] would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264-1265.)

As the trial court pointed out at the hearing, plaintiff did not seek to amend his pleadings to include the national origin discrimination claim. Plaintiff was thus limited to the gender discrimination allegations of his first amended complaint. Plaintiff's 2014 memos and emails failed to satisfy the first element of this cause of action.

Plaintiff is correct that his January 28, 2015 EEOC complaint alleged gender discrimination. Yet, as the trial court observed, the timing of this complaint negates any claim that CCHCS retaliated against plaintiff on the basis of gender. Plaintiff left work on sick leave on January 30, 2015. CCHCS did not have notice of the EEOC complaint until February 2015. For plaintiff to prevail on a claim of gender retaliation as alleged in his complaint, he was required to show an adverse employment action occurred after he had made his gender-based complaints. In his opening brief on appeal, plaintiff points to several adverse employment actions: denial of overtime, reduction in hours, assignments to undesirable and long shifts, and failure to promote. But plaintiff conveniently ignores that none of these claimed adverse actions were in response to a complaint about gender discrimination. At the time of these events, plaintiff had complained only of national original discrimination, a claim not alleged in the first cause of action.

13

The only alleged act of retaliation after the January 28, 2015, EEOC notice was on May 11, 2015, when, as plaintiff puts it, he "was terminated from employment for accepting an additional appointment."

But the uncontroverted evidence was that CCHCS did not terminate plaintiff at all. While out on sick leave, plaintiff on his own chose to take a full-time position with another state department, CalVet. When advised that plaintiff had accepted a new job, CCHCS dutifully transferred his employment to the new department. Plaintiff argues that he was not voluntarily transferred because he wanted to hold both positions. It may be true that he hoped to maintain dual employment but that was not available under state personnel guidelines.

A CalVet personnel officer attested that plaintiff would not have been permitted to hold both, and that CalVet would not have offered plaintiff the position if it had known he had intended to keep his job at CCHCS. She explained: "As the only RN at the facility, [plaintiff] may be subject to mandatory overtime depending on operational need." This was the same policy in effect at Lancaster Prison when plaintiff worked there, and was at least one of the reasons behind his decision not to accept a different full-time job in December 2013.

Nothing in plaintiff's summary judgment papers negated the evidence that his acceptance of the CalVet job constituted a voluntary relinquishment of his job at Lancaster Prison. Nor does the record reflect that when he realized his mistake at CalVet, he asked to return to his CCHCS part time position. His unauthenticated belief, expressed in his deposition, that he could hold both positions was not evidence of that claim. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1118 [speculation that discrimination occurred is insufficient to create triable issue of material fact on summary judgment].)

14

We agree with the trial court that plaintiff did not create a triable issue of fact as to the first cause of action.

## 2. *Second Cause of Action for Gender Discrimination in Violation of FEHA*

Plaintiff's second cause of action alleged gender discrimination in violation of FEHA. To establish a prima facie case of discrimination, a plaintiff must show that: "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).) In the summary judgment context, the employer can attack one of these elements or show that the adverse employment action was based upon legitimate, nondiscriminatory factors. (*Galvan v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 549, 559.) " 'If the employer meets its initial burden, the burden shifts to the employee to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action." ' " (*Ibid.*)

Plaintiff's second cause of action alleged that CCHCS "specifically" discriminated against plaintiff by promoting "less qualified female candidates for supervisor positions that Plaintiff was eligible for and expressed interest in."

In moving for summary judgment, CCHCS provided evidence of its legitimate businesses reasons for the promotion decisions. Plaintiff had applied for two full-time supervisor registered nurse II promotions that became available in early

15

2014. A single interview process was conducted for these two positions and seven people (including plaintiff) were interviewed before a panel. The highest-scoring and second-highest applicant scores were 37 and 33 (out of a possible 51 points), and those two applicants were offered the two available positions. Plaintiff scored 27 out of a 51. Because plaintiff was not the highest scoring or second-highest scoring applicant, he was not offered either of the two available positions. The uncontroverted evidence was that CCHCS acted in accordance with its "pattern and practice" to offer positions to the highest scoring applicant.

A third full-time supervisor registered nurse II position became available in October 2014, and plaintiff applied. A panel interviewed all candidates. The successful applicant for this position scored 37 out of a maximum possible 57 points; plaintiff was the second-highest scoring applicant, with a score of 30. Consistent with CCHCS' practice, the candidate with the highest score during the interviews, not plaintiff, was offered the position.

In response, plaintiff asserted that the promotions were based on gender and cited his deposition testimony, in which he testified that he believed he was better qualified for the position. As the trial court concluded, "Even when viewed in the light most favorable to Plaintiff, Plaintiff's self-serving deposition testimony is insufficient to demonstrate discriminatory motive or to demonstrate that [CCHCS]'s offered reason for denying him the promotions was not legitimate." A "plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

Plaintiff argues that in addition to being passed over for promotions, he was denied overtime, suffered discipline and

16

verbal abuse, was given a less desirable schedule, and was terminated as a result of the discrimination. He did not plead any of these adverse actions in his second cause of action which was "specifically" based on the failure to promote. (See *Laabs, supra,* 163 Cal.App.4th at p. 1258.) The trial court correctly concluded no triable issue of fact existed as to the second cause of action.

**3.** ***Third Cause of Action for Failure to Prevent Discrimination and Retaliation Under FEHA***

The third cause of action for failure to prevent discrimination and retaliation, brought under Government Code section 12940, subdivision (k), incorporated the discrimination and retaliation claims of the first two causes of action. "An actionable claim under section 12940, subdivision (k) is dependent on a claim of actual discrimination: 'Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021.) We agree with the trial that the third cause of action must fail because plaintiff did not show that the underlying discrimination and retaliation occurred.

**4.** ***Fourth Cause of Action for Retaliation in Violation of Labor Code Section 1102.5***

Labor Code, section 1102.5, subdivision (b) prohibits retaliation "for disclosing information" to a person with authority over the employee or another employee who has the authority to investigate the matter disclosed "if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute . . . ."

To establish a prima facie case of retaliation, a plaintiff must show: "(1) she engaged in a protected activity, (2) her

17

employer subjected her to an adverse employment action, and (3) there is a causal link between the two." (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384 (*Patten*).) The employee must "reasonably believe [he] was disclosing a violation of state or federal law." (*Id.* at p. 1386.)

Here, the trial court concluded that plaintiff did not present evidence that he engaged in a protected activity. We agree.

Although plaintiff raised a variety of protected activities in opposition to summary judgment, he argues only a single alleged protected activity on appeal. Plaintiff asserts that he was retaliated against after reporting "labor violations when [Supervisor] Brooks authorized employees to work more than 24 consecutive hours."

The undisputed facts show that on July 24, 2014, plaintiff sent an email complaint to management regarding a directive he received from supervisor Brooks. He indicated Brooks's directive suggested that staff members could work 24 hours straight if the staff member chose to do so. Plaintiff stated he refused to comply because he "believed this directive to be unlawful."[7]

The record does not reveal that Brooks's directive was unlawful. Title 8, California Code of Regulations section 11040, subdivision (3)(B)(10), allows for employees to voluntarily agree to work a 24-hour shift. That section provides: "Provided further that no employee shall be required to work more than 16 hours in a 24 hour period unless by voluntary mutual agreement of the employee and the employer, and no employee shall work more

---

[7]    Plaintiff received a response to his email complaint less than an hour later, which said that "Management" was "addressing the concerns he had brought forward." The next day, Brooks provided a memorandum clarifying that, "staffs [sic] may not be required or volunteer to work . . . more than 16 hours of overtime within a 24 hours work day."

18

than 24 consecutive hours until said employee receives not less than eight (8) consecutive hours off duty immediately following the twenty-four consecutive hours of work."  (Cal. Code Regs., tit. 8, § 11040, subd. (3)(B)(10).)

It is true that plaintiff complained about the practice, but it was not about illegal activity.  Even in his email, plaintiff stated only that he felt the directive violated "ethics and common law." Yet, feelings, without any basis in law, do not amount to reasonable beliefs.  " 'To have a reasonably based suspicion of illegal activity, the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed.' " (*Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 592 (*Ross*).)

Plaintiff did not direct the trial court's attention to any statute, rule or regulation that formed his belief that the 24-hour voluntary shift was illegal, nor did he do so in his opening brief here.  Even when defendant challenged plaintiff on this point in respondent's brief, plaintiff's reply was limited to the "ethics and the common law" point he made in his email, and a generalized argument that he believed the extended shift was illegal.  The trial court correctly concluded that the absence of any protected activity was fatal to plaintiff's fourth cause of action.

Citing *Yanowitz, supra,* 36 Cal.4th at page 1043, plaintiff argues that "even if it were accepted that [plaintiff] misunderstood Brooks' directive, retaliation is nonetheless unlawful so long as [plaintiff] reasonably and in good faith believed Brooks' directive authorized an unlawful act."  *Yanowitz* addressed a FEHA retaliation claim, not a Labor Code section 1102.5, subdivision (b) retaliation claim.  The difference is significant.

19

Under FEHA, it is unlawful for "any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h).) This statute has no requirement that the employee have a reasonable belief that a state or federal statute has been violated by the employer. Implied is a reasonable belief that the employer's conduct was discriminatory. (*Yanowitz, surpa,* 36 Cal.4th at p. 1043.)

In contrast, Labor Code, section 1102.5, subdivision (b) expressly requires the employee to have "reasonable cause to believe that" he is disclosing "a violation of state or federal statute." Courts have interpreted this to require the employee to " 'to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed.' " (*Ross, supra,* 36 Cal.App.5th at p. 592; *Patten, supra,* 134 Cal.App.4th at pp. 1384-1385; Chin et al., Cal. Prac. Guide Employment Litigation (The Rutter Group 2019) Ch. 2(II)-B, § 5:1750.)

To the extent that plaintiff asserts "he reasonably and in good faith believed Brooks' directive authorized an unlawful act," plaintiff pointed to no legal foundation to provide good faith for his suspicion and produced no evidence that he had *reasonable cause* for that belief. That plaintiff *actually* believed Brooks authorized an unlawful act is simply insufficient to prove a violation of Labor Code section 1102.5. Plaintiff created no triable issue of material fact on the fourth cause of action.

### 5. Fifth Cause of Action for Retaliation in Violation of Health and Safety Code Section 1278.5

In the fifth cause of action, plaintiff alleged that, as a "health facility," CCHCS "violated Health & Safety Code

[section] 1278.5 by terminating his employment in retaliation for the complaints he made to [CCHCS] about the quality of patient care and patient safety issues as well as his refusal to falsely document medical records through the inclusion of false information."

Under the Government Claims Act, a party cannot bring suit for "money or damages" against a public entity unless "a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board." (Gov. Code, § 945.4; see Gov. Code, § 905.2, subd. (b)(3).) Under Government Code section 945.4, "presentation of a timely claim is a condition precedent to the commencement of suit against a public entity." (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776–1777.) To be timely, a claim of this sort must be filed with what is now the Department of General Services's Government Claims Program within six months of the accrual of the action. (Gov. Code, § 911.2.)

Plaintiff did not allege that he complied with the Government Claims Act, and did not provide a copy of any claim. Plaintiff's failure to file a claim under the Government Claims Act is dispositive of the fifth cause of action.

Plaintiff argues that his March 7, 2016 whistleblower retaliation complaint filed with the State Personnel Board was the functional equivalent of filing a claim under the Government Claims Act. Plaintiff cites *Cornejo v. Lightbourne* (2013) 220 Cal.App.4th 932, 941 (*Cornejo*), for support of his argument that because "this claim was duly presented to a State administrative procedure, [sic] the purposes of the Government Claims Act have been met and no provision of the Act bar [plaintiff's] claim on this point."

21

*Cornejo* is inapt as it addressed a claim brought, not under Health and Safety Code section 1278.5, but rather under the California Whistleblower Protection Act (WPA) (Gov. Code, § 8547, et seq.). (*Cornejo, supra,* 220 Cal.App.4th at p. 937.) The *Cornejo* plaintiff contended that the WPA was not subject to the Government Claims Act procedure "because [the WPA] has a comprehensive administrative procedure that satisfies the purposes of the presentation procedure in the [Government] Claims Act." (*Ibid.*) The *Cornejo* court agreed that claims brought under the WPA specifically were not subject to the Government Claims Act procedures; the court limited its holding to WPA claims. (*Id.* at pp. 938-942.)

As the court explained: "Ordinarily, filing a claim with a public entity pursuant to the [Government] Claims Act is a jurisdictional element of any cause of action for damages against the public entity." (*Cornejo, supra,* 220 Cal.App.4th at p. 938.) The court recognized that while there are "certain types of claims . . . expressly exempted from the presentation requirement," none of which are at issue here, "a court will infer a legislative intent to excuse compliance only where a claim is based on a statutory scheme with a 'functionally equivalent claim process' and a comparable scheme for administrative enforcement." (*Ibid.*) The court observed, "Such exceptions to the presentation procedure are rarely found," (*ibid.*) and that "other than a vintage decision . . . involving a somewhat obscure flood repair law [the Emergency Flood Relief Act]," the "only claims to date found exempt from the presentation requirement . . . are those arising under the FEHA." (*Id.* at p. 939.) The court added claims brought under the WPA to the limited list of claims exempt from the presentation requirement based on the WPA's own comprehensive administrative procedure. (*Id.* at pp. 942-943.)

In contrast, Health and Safety Code section 1278.5 (under which plaintiff brings the fifth cause of action) is not part of a statutory scheme with a "functionally equivalent claim process" and scheme for enforcement comparable to the Government Claims Act. Plaintiff cites no law showing otherwise, and we agree with the trial court that the failure to present a Government Claim doomed the fifth cause of action.

**6.**      ***Sixth Cause of Action for Violation of the WPA***

Plaintiff's Sixth Cause of Action for violation of the Whistleblower Protection Act (WPA), Government Code section 8547, alleged that CCHCS "violated the [WPA] by terminating his employment in retaliation for the complaints he made to [CCHCS] about the quality of patient care and patient safety issues as well as his refusal to falsify document medical records through the inclusion of false information."

For a Government Code section 8547 retaliation claim, plaintiff was required to plead (1) he engaged in a protected activity; (2) he was subjected to an adverse action by his employer; and (3) a causal connection between the two. (*Morgan v. Regents of University of the University of California* (2000) 88 Cal.App.4th 52, 69.) The retaliatory motive may be shown by evidence "that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." (*Id.* at p. 69.)

The sole adverse action plaintiff alleged in his sixth cause of action – and the only action argued on appeal —in retaliation for his filing of his State Personnel Board Complaint on March 7, 2016 was his "termination."

As we have already discussed, plaintiff was not terminated, but rather transferred to CalVet for his own reasons. That plaintiff did not understand that his voluntary assumption of the

23

CalVet nurse's position precluded his working for CCHCS at Lancaster Prison did not convert his unforced job change into a wrongful termination.

The trial court's ruling on the sixth cause of action was correct.

## DISPOSITION

The judgment is affirmed.  Defendant California Correctional Health Care Services is awarded costs on appeal.

RUBIN, P.J.

I CONCUR:

MOOR, J.

Kuigoua v. California Corrections Health Care Services et al.
B291984


BAKER, J., Concurring


I join the majority's opinion with the exception of Part 4 of the Discussion.  I believe summary adjudication of plaintiff Arno Kuigoua's fourth cause of action for whistleblower retaliation was warranted because there is no substantial evidence of causation in the summary judgment record.  (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162-163 ["in order to avert summary judgment the plaintiff must produce substantial responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing"]; see also *Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538, 1540 ["The plaintiff must show he engaged in protected activity, his employer subjected him to an adverse employment action, and there is a causal link between the two"].)


BAKER, J.